(No. 15819.—Judgment reversed.)

THE PEOPLE *ex rel.* Phosa L. Williams, County Collector, Appellee, *vs.* W. H. DUNHAM *et al.* Appellants.

*Opinion filed February 19, 1924—Rehearing denied April 3, 1924.*

TAXES—*when high school district cannot tax territory detached from district although proceedings were held void.* Territory detached from a community high school district by an *ex-officio* board is not liable for taxes extended by the district for the two years intervening between such detachment and a finding by the Supreme Court that the detachment proceedings were insufficient, where taxes were levied by a non-high-school district for said two years and were paid by the property owners in the detached territory.

APPEAL from the County Court of Pike county; the Hon. MARK BRADBURN, Judge, presiding.

HOGAN & REESE, (EDWARD DOOCY, of counsel,) for appellants.

BARRY MUMFORD, State's Attorney, (CAPPS & WEAVER, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The county collector of Pike county applied to the county court for judgment against the lands of the appellants for taxes extended in 1922 by Community High School District

No. 171 for the years 1920 and 1921. The appellants filed
objections, one of which was that during those years no
taxes for the community high school district were levied
or extended against their property but during those years
school taxes were levied and extended against said property
by a non-high-school district, in which the lands of the ap-
pellants were then located by an order of the *ex-officio* board
detaching them from the community high school district, all
of which taxes so levied and extended were paid. The ob-
jections were overruled and judgment rendered accordingly.

The facts were not in dispute and were mainly stipu-
lated. Community High School District No. 171 was or-
ganized by an election held on January 10, 1920, and con-
sists of two townships and parts of five other townships,
including a large area in Pike county. Soon afterward, on
January 28, 1920, and February 11, 1920, six petitions of
land owners, including all the lands on which this tax was
levied, were filed with the *ex-officio* board, asking the board
to detach the lands and to add these lands to a non-high-
school district. On May 24 and June 16 the petitions to
detach territory were acted upon by the *ex-officio* board,
which granted the petitions to detach the lands of the ap-
pellants from the district. On July 1, 1921, an act of the
legislature validating acts of *ex-officio* boards upon the con-
ditions therein stated took effect. (Laws of 1921, p. 828.)
On July 14, 1921, a petition was filed in the circuit court for
a writ of *certiorari* directed to the *ex-officio* board to certify
to the court its record in the proceeding to detach territory.
Upon a hearing the court quashed the writ of *certiorari*
and affirmed the action of the *ex-officio* board. From that
judgment an appeal was prosecuted to this court, and the
judgment was reversed on June 21, 1922. The cause was
remanded to the circuit court, with directions to quash the
record. (*McKeown v. Moore,* 303 Ill. 448.) Afterward
the community high school district extended these taxes for
the back years 1920 and 1921. On January 29, 1923, the

circuit court quashed the record of the *ex-officio* board, as directed by this court. There had been a bill for injunction against taxes outside Griggsville township and the injunction was dissolved by the circuit court. It was while the record of the *ex-officio* board detaching the appellants' lands was in force and unreversed that the taxes were levied by the non-high-school district to which the land had been assigned by the order of the *ex-officio* board and the taxes were extended and paid. The tax levied for 1920 by the community high school district was for $30,000, and the tax was extended against property, not including the lands detached, to produce $30,475. The tax levied for 1921 was for $15,000 and was extended at a rate to produce $15,406. These taxes were collected, satisfying the entire levy, and the levy made in 1922 upon lands of appellants would produce $11,249 in addition to the levy for the two years already collected.

There can be no question that the levy and the judgment of the county court work a serious injustice to the appellants, who had contributed their several proportions to the public purpose of maintaining schools. It is proposed that the appellants now contribute for the maintenance of a community high school during two years when under the order of the *ex-officio* board the lands were not within that district and had no benefit of the taxes and the appellants in good faith paid taxes for the maintenance of schools in a non-high-school district. The argument in support of this obvious injustice is, that the act of 1917 providing for an appeal to the county superintendent of schools in detachment proceedings is unconstitutional, as decided in *Jackson* v. *Blair,* 298 Ill. 605. The argument is that all acts done under an unconstitutional statute are void and of no effect and in legal contemplation the situation remains the same as though the act had never been passed. It is true that proceedings of an *ex-officio* board under the act of 1917 were void until the validating act of 1921, which

was held valid, effective and within the legislative power in
*Milstead* v. *Boone,* 301 Ill. 213. This court fully recognized
the validity of that act, but held in *McKeown* v. *Moore,
supra,* that the proceeding to detach the lands of the appel-
lants was insufficient because the record of the *ex-officio*
board did not show on its face that all the requirements of
the law had been complied with. The merits of the case
were not decided in that case nor in any other, and there
is no end of right or justice to be attained by affirming the
judgment in this case. The decision of this court was on
the ground that the proceeding was had by the common
law writ of *certiorari* from the circuit court to the *ex-officio*
board, and the only question to be determined was, from
an inspection of the record alone, whether the *ex-officio*
board had jurisdiction or exceeded its jurisdiction or failed
to proceed according to the essential requirements of the
law. The record so returned to the circuit court contained
a petition signed by thirteen persons, stating that they were
two-thirds of the legal voters in the lands to be detached,
but under the common law the recital in the petition was
held not evidence of the fact, and the finding by the
*ex-officio* board would be no evidence because that board
was not legally constituted, and the validating act did not
apply. On February 5, 1920, an information in the nature
of *quo warranto* was filed in the circuit court attacking the
legality of the organization of the high school district, and
upon a hearing the court dismissed the information, and on
a writ of error from this court the judgment was affirmed
on December 19, 1922. A plea of justification was filed in
the circuit court, setting out all the proceedings by which
the district was organized, with a description of the terri-
tory included within the district, together with a map of the
same. To that plea replications were filed, and the tenth
replication re-affirmed the usurpation, offering an issue as
to all the facts alleged in the plea. The People took issue
by a traverse and an issue of fact was formed for trial.

The parties entered into a stipulation that "the allegations of the plea may be accepted and considered by the court as *prima facie* true." This court held that by that stipulation the People had admitted that the facts stated in the plea were true and could not meet and overcome the *prima facie* case. There is not a suspicion that the appellants did not act in good faith and comply with the existing law as they understood it, and if it were true that they should consider and determine the question of the constitutionality of the act for detaching their lands, it would be a quite unreasonable burden to require them to know more than the circuit court which quashed the writ of *certiorari* and upheld the proceedings.

This case comes exactly within the decision of this court in *Wabash Railroad Co.* v. *People,* 196 Ill. 606. In that case the railroad ran through the east half of sections 25 and 36, which prior to the year 1892 was within the limits of school district No. 4. In April, 1892, the boundaries of the school district were so changed that the east half of said sections became a part of school district No. 2, but notwithstanding the change the county clerk continued to extend the taxes for school purposes against the railroad company in the east half of those sections for the years 1892 to 1898, inclusive, as still in district No. 4. The taxes were paid, turned over and received by district No. 4. The taxes for school purposes levied by district No. 2 were extended against other property than that of the railroad company and were paid, so that district No. 2 received the taxes levied in that school district for those years from persons other than the railroad company. The proceeding before the court was to obtain a judgment against the property as omitted property for taxes which should have been assessed against it. It was held that the judgment by the county court against the railroad company could not be sustained under sections 276 and 277 of the Revenue act as omitted property nor as property liable to taxation, where

the tax was prevented from being collected by reason of any erroneous proceeding or other cause. That was the situation here. The property of appellants was not omitted from school taxes but was assessed and taxed and the taxes paid.

In *Ohio and Mississippi Railway Co.* v. *People,* 123 Ill. 648, the commissioners of highways from 1875 to 1883, inclusive, levied road taxes upon all the taxable property of the town except the property of the railway company, which was overlooked. In 1886 the omission was discovered and the commissioners levied taxes for the years from 1875 to 1883 against the property. It was held that it was the duty of the commissioners to levy the road tax annually and that the action of the commissioners was illegal and void.

If the appellants should be required to pay these taxes they would have no remedy to recover the taxes already paid but must submit to the injustice of duplicate taxation. In *Walser* v. *Board of Education,* 160 Ill. 272, the board of education and five tax-payers filed a bill alleging that by a mistake of the county clerk real estate in fact located in school district No. 2 was entered upon the collector's book as being in district No. 1 and school taxes were collected and paid over to the treasurer of district No. 1. The prayer of the bill was to require the board of education of district No. 1 to return the taxes received by it. The court held there could be no recovery, and that the tax-payers in one school district who had voluntarily paid taxes levied by mistake upon their lands for another district could not recover back the same although the tax levied was illegal and void.

The judgment of the county court was contrary to the law, and it is reversed.

*Judgment reversed.*